**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| JASON A. MAHE,<br><br>                                    Plaintiff,<br><br>    v.<br><br>JENNIFER DUNBAR, *et. al.*,<br><br>                                    Defendants. | Case No. 3:21-CV-00355-MMD-CLB<br><br>**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE**[1] |

Before the Court is Plaintiff Jason Mahe's ("Mahe") motion for leave to file a third amended complaint, along with a supplement to the motion. (ECF Nos. 41, 43.) Defendants Jennifer McCain-Dunbar and Lisa Walsh (collectively referred to as "Defendants") filed a non-opposition to the motion. (ECF No. 45.) For the reasons discussed below, the Court recommends that Mahe's motion for leave to file a third amended complaint, (ECF No. 41), be denied.

**I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Mahe is an inmate in the custody of the Nevada Department of Corrections ("NDOC") and is currently housed at the Northern Nevada Correctional Center ("NNCC"). Mahe initiated this action on August 12, 2021, by filing a civil rights complaint. (ECF No. 1.)

The second amended complaint, filed on June 28, 2022, is currently the operative complaint in this case. (ECF No. 16.) The second amended complaint alleges the following: Mahe filed a civil rights lawsuit against C/O Joe Barlett for "illegally breaking [his] arm." (*Id.* at 3, 12.) Dunbar, Thompson, Russell, Walsh, and Wickham were "fully aware" of the lawsuit because Mahe gave them "verbal or written notice" of it. (*Id.* at 19.) After the lawsuit was filed, these Defendants sought to retaliate against Mahe for suing

---

[1]    This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

their "friend and co-worker[]." (*Id.* at 2-3, 19.)

On three separate occasions, Dunbar stole "legal documents" Mahe had submitted to the law library for copying. (*Id.* at 5.) The documents were exhibits that "prove[d]" Mahe's claims against Barlett for breaking his arm. (*Id.*) The exhibits included (1) "sworn affidavits from fellow prisoners/witnesses"; (2) copies of memos "posted at NNCC showing the approval of illegal misconduct"; (3) "incriminating handwritten post-it notes from staff"; and (4) "pages of personal handwritten notes to show [the] who, what, when, where, and why" of the alleged misconduct. (*Id.* at 5-6.)

Moreover, Dunbar denied Mahe access to "legal material," including "self-help books [on] how to navigate the courts," as well as paper, pens, and envelopes. (*Id.* at 8.) Dunbar also (1) instructed an "inmate law clerk" not to assist Mahe with litigation against Dunbar's friends; (2) refused to give Mahe the "proper financial certificate" for federal court actions, forcing him "to dismiss a [§] 1983 claim"; and (3) misled Mahe into believing he could not "refile" his § 1983 lawsuit to "fix[ ] his deficiency." (*Id.* at 6-7, 9.) Due to Dunbar's misconduct, Mahe "was unable to" obtain "injunctive relief to . . . prevent [a] threatened assault." (*Id.* at 11.) Unidentified "NNCC employees" carried out the attack "in [an] attempt[ ] to bully Mahe into keeping quiet." (*Id.* at 10.)

Walsh, for her part, responded to Mahe's lawsuit against Barlett by ordering "numerous uncalled for 'shakedowns' and/or 'compliance checks.'" (*Id.* at 14.) During these incidents, "all or most" of Mahe's personal property was damaged or stolen. (*Id.*) The official justification was that Mahe had "excessive property," but Mahe claims this was a "lie and [a] ruse." (*Id.*) Mahe later learned from an NNCC officer that the "shakedowns" were meant to "teach [him] a lesson." (*Id.*)

Walsh, Wickham, Thompson, and Russell rejected Mahe's grievances by sending him "fictitious" improper grievance memos. (*Id.* at 3, 9, 18.) As a result, Mahe could not "remedy grievable issues," including the "threats and retaliation" he faced due to the lawsuit against Barlett. (*Id.* at 3.) Moreover, Walsh and Russell told Mahe to "stop snitching on them" and "shut [his] mouth." (*Id.* at 12.)

2

Pursuant to 28 U.S.C. § 1915A, the District Court screened Mahe's second amended complaint on September 1, 2022, and allowed him to proceed on a two separate retaliation claims against Defendants Dunbar and Walsh. (ECF No. 18.) As to Dunbar, the Court found Mahe's allegations that Dunbar was friends with Barlett, knew about the lawsuit against him, and was aware that the exhibits "show[ed] [him] in ill favor", were sufficient to show that Dunbar stole Mahe's exhibits in an attempt to thwart his lawsuit against Barlett, Dunbar's friend, and thus stated a colorable retaliation claim against Dunbar. (*Id.* at 6.) As to Walsh, the Court found Mahe's allegations that Walsh knew about the lawsuit against Barlett and was friends with him, and in response to the lawsuit, Walsh ordered "numerous uncalled for 'shakedowns' and/or 'compliance checks where "all or most" of Mahe's personal property was damaged or stolen, plausibly suggest that Walsh ordered officers to search Mahe's cell in retaliation for the lawsuit he filed against Barlett, which was sufficient to state a colorable retaliation claim. (*Id.*) The Court also dismissed a retaliation claim against Defendants Harold Wickham, Toni Thompson, and Perry Russell without prejudice, and a Fourteenth Amendment claim for denial of access to courts without prejudice. (*Id.* at 7-9.)

On March 7, 2023, Defendants filed their answer. (ECF No. 30.) The scheduling order in this case required any amended pleadings to be filed by May 8, 2023. (ECF No. 31.) On April 19, 2023, Mahe timely filed the instant motion for leave to amend, along with his proposed third amended complaint. (ECF Nos. 41, 43.)

II.     **LEGAL STANDARD**

Federal Rule of Civil Procedure 15(a)(2) instructs that "[t]he court should freely give[] leave [to amend a pleading] when justice so requires." The Ninth Circuit has made clear Rule 15(a) permits liberal application. *Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma Cnty.*, 708 F.3d 1109, 1117 (9th Cir. 2013). Under Rule 15(a), courts consider various factors, including: (1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) the futility of the amendment; and (5) whether the plaintiff has previously amended his complaint. *Desertrain v. City of Los Angeles*, 754 F.3d 1147, 1154 (9th Cir.

2014). The factors do not weigh equally; rather, prejudice receives the greatest weight. *Brown v. Stored Value Cards, Inc.*, 953 F.3d 567, 574 (9th Cir. 2020) (citing *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003)).

Defendants bear the burden of establishing prejudice, and absent its presence or a "strong showing" under the other factors, there is a presumption in favor of permitting amendment. *Eminence Cap., LLC*, 316 F.3d at 1052 (citing *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186-87 (9th Cir. 1987)). When considering prejudice, the court may weigh against the movant the amended pleading's great alteration of the litigation's nature that requires the opposing party to defend against "different legal theories and . . . different facts." *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 953 (9th Cir. 2006) (internal quotation omitted). Alone, such alteration is not fatal. *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990).

By contrast, futility "alone can justify the denial of a motion for leave to amend." *Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2003) (quoting *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995)). Futility arises when the amendment is legally insufficient, *Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 656 (9th Cir. 2017), or where the amended complaint would be subject to dismissal, such as when it violates the statute of limitations. *Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*, 522 F.3d 1049, 1060 (9th Cir. 2008).

### III.   DISCUSSION

Mahe seeks to amend his complaint to add both claims and defendants. (ECF No. 41-1.) Specifically, Mahe's proposed third amended complaint names as Defendants, NNCC Law Library Supervisor Jennifer McCain-Dunbar ("Dunbar"), Head Warden of NNCC Perry Russell ("Russell"), Associate Warden of NNCC Lisa Walsh ("Walsh"), Deputy Director of NDOC Harold Wickham ("Wickham"), Assistant Warden of NNCC Toni Thompson ("Thompson"), Yard Investigator Ron Abloe ("Abloe"), Yard Investigator Coltrin ("Coltrin"), Director of NDOC Charles Daniels ("Daniels"), Associate Warden Johnathan Henly ("Henly"), Deputy Director of NDOC Brian Williams ("Williams"), Associate Warden of NNCC Robert Hartman ("Hartman"), Head Caseworker Hughes ("Hughes"), Deputy

Director of NDOC Gittere ("Gittere"), W. Miller ("Miller"), and Jane/John Doe Central Office Staff. (*Id.* at 1-7.) Mahe's proposed third amended complaint asserts two claims: (1) a First Amendment retaliation claim; and (2) a Fourteenth Amendment due process claim. (ECF No. 41-1.) Defendants filed a non-opposition to the motion. (ECF No. 45.) Before addressing the motion to amend, the Court will summarize the allegations in each of Mahe's claims.

### A. First Amendment Retaliation

Mahe's retaliation claim alleges the following: at all relevant times, Mahe was incarcerated at NNCC and mostly housed in solitary confinement or the "hole". (ECF No. 41-1 at 6.) Defendants Russell, Thompson, Wickham, Walsh, Abloe, Coltrin, Dunbar, Miller, Hughes, Henly, and Hartman conspired to use retaliation to deprive Mahe of "basic human decenc[ies]" and to "deter" Mahe from filing further litigation. (*Id.*) Russell, Wickham, Walsh, Abloe, Coltrin, Daniels, Henley, Hartman, Hughes, Miller, and Gittere retaliated against Mahe by: (1) allowing long-term solitary confinement; (2) disregard for NDOC and NNCC policies concerning well-being; (3) failure to protect and/or investigate claims of other retaliation or excessive force on Mahe; and (4) failure to accommodate Mahe's handicapped needs as a means of "torture". (*Id.* at 6-7.) All Defendants and Jane/John Central Office Staff joined the "conspiracy" to violate Mahe's right to be free from retaliation for filing litigation, as Mahe has "done a relentless due diligence in written correspondence either via U.S.P.S. and/or grievances, kites, or verbally." (*Id.* at 7.)

Defendants Dunbar and Thompson retaliated against Mahe by stealing legal documents under the "ruse" of documents being "misplaced" in an attempt to keep Mahe's complaints from staff members and continue to hide illegal misconduct Mahe was subjected to. (*Id.* at 7-8.) Dunbar and Thompson conspired to retaliate against Mahe by stealing numerous legal documents/grievances from January 2020 through 2022. (*Id.* at 9.) Defendants Abloe and Coltrin opened incoming and outgoing legal mail as a form of deterrent retaliation. (*Id.* at 8.)

///

Defendants Henly, Hartman, Russell, Hughes, and Miller conspired to violate Mahe's civil rights by denying due process concerning: (1) disciplinary proceedings; (2) solitary confinement hearings or administrative segregation, full-class hearings—therefore keeping Mahe in long-term punitive solitary confinement with zero out of cell recreation for over 3.5 years causing physical injury to Mahe's back and leg, and severe mental health issues; and (3) refusing to investigate, handle, or answer grievances or complaints made by Mahe in retaliation and conspiracy to violate Mahe's civil rights to be free from retaliation for filing complaints and/or litigation. (*Id.* at 8-9.)

Defendants Williams, Gittere, and Daniels are responsible for training and enforcement of all NRS statutes, Administrative Regulations and Operational Procedures as to the other named Defendants. (*Id.* at 9.) All Defendants are fully aware of Mahe's original lawsuit and the retaliation he was being subjected to, "so much so that any normal person would have reported the illegal retaliatory misconduct to a higher official." (*Id.*)

Defendant Walsh joined the retaliation by signing fictitious DOC-3098 Improper Grievance Memo forms, denying due process, and violating NDOC/NNCC policy in retaliation for Mahe filing his original complaint on her friend and co-worker who illegally used excessive force and broke Mahe's left arm. (*Id.* at 10.)

**B.  Fourteenth Amendment Due Process**

Mahe's due process claim alleges the following: Defendants Walsh, Henley, Williams, Gittere, Miller, Hartman, Russell, and Walsh denied Mahe's due process in all of Mahe's "unwarranted disciplinary hearings." (*Id.* at 11.) On numerous occasions Mahe was given fictious notice of charges ("NOCs") for behavior that was exaggerated or made up in violation of due process rights such as but not limited to being present at the hearing, calling witnesses, questioning evidence, reviewing camera footage to prove his innocence. (*Id.*) Mahe would attempt to appeal the write-ups only to be delayed, hindered, and blocked. (*Id.*) To date, write-ups or grievances from 2019 have not been processed or heard. (*Id.*) Mahe believes this is done as "intentional infliction of emotional distress being that [Mahe] has been subjected to numerous fashions of torture both physically and

mentally for his filing of grievances, appeals, and litigation." (*Id.* at 12.) Mahe was "extorted out of 'plea deals' to fictitious write-ups" and forced to "face unheard of excessive disciplinary sanctions." (*Id.*)

Defendants Dunbar, Thompson, and Walsh violated Mahe's due process rights by stealing Mahe's legal documents, causing him to have to voluntarily dismiss a lawsuit or be subjected to a "strike," and purposely giving Mahe a "bogus" financial certificate. (*Id.* at 12-13.) Defendants Thompson and Walsh conspired to violate Mahe's civil rights "out of pure spite" for Mahe filing his original complaint against Defendants' friend and co-worker. (*Id.*)

### C. Motion to Amend

As discussed above, Federal Rule of Civil Procedure 15(a)(2) instructs that "[t]he court should freely give[] leave [to amend a pleading] when justice so requires." Under Rule 15(a), courts consider several factors, including: (1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) the futility of the amendment; and (5) whether the plaintiff has previously amended his complaint. *Desertrain*, 754 F.3d at 1154.

Having reviewed Mahe's proposed amended pleading, the Court finds that Mahe's motion to amend should be denied, as the above factors discussed in *Desertrain* weigh against allowing amendment.

While the record does not demonstrate that Mahe is acting in bad faith and he timely filed his amended pleading, the proposed third amended complaint, which seeks to add an additional 13 defendants and additional claims—including newly alleged due process claims—would greatly alter the litigation's nature and require an entirely new course of defense. *Morongo Band of Mission Indians*, 893 F.2d at 1079. Thus, the proposed changes greatly prejudice defendants. *See Brown*, 953 F.3d at 574 (factors do not weigh equally; rather, prejudice receives the greatest weight).

Additionally, the proposed amended pleading fails to state any colorable claims as currently pled, because the allegations are vague and conclusory, and it fails to allege facts sufficient to establish personal participation by several defendants. A complaint must

contain more than a "formulaic recitation of the elements of a cause of actions," it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The pleading must contain something more. . . than. . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* (citation and quotation marks omitted). At a minimum, a plaintiff should include "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because the proposed amendment fails to state a claim and thus is subject to dismissal, the motion should be denied. *See Wheeler v. City of Santa Clara*, 894 F.3d 1046, 1059 (9th Cir. 2018) (a motion for leave to amend a complaint may be denied if the proposed amendment is futile or would be subject to dismissal).

Additionally, the District Court previously screened out several allegations that Mahe attempts to reallege in his amended pleading. (*Compare* ECF Nos. 8, 13, 18 *with* ECF No. 41-1.) Finally, the proposed amended pleading would be Mahe's <u>fourth</u> amended pleading in this action, which weighs against further amendment.

In sum, the bulk of the *Desertrain* factors weigh against allowing amendment, and, therefore, the Court concludes that amendment is improper and recommends that Mahe's motion be denied.

## IV.   CONCLUSION

Based upon the foregoing, the Court recommends that Mahe's motion for leave to file a third amended complaint (ECF No. 41) be denied.

The parties are advised:

1.   Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.   This Report and Recommendation is not an appealable order and any

notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## V. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Mahe's motion for leave to file a third amended complaint (ECF No. 41) be **DENIED**.

DATED: May 17, 2023.

_____
UNITED STATES MAGISTRATE JUDGE